```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

ARCADIO VARGAS, JR.,

                              Plaintiff,      **No. 6:16-cv-06114(MAT)**
                                                             **DECISION AND ORDER**

          -vs-

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                              Defendant.

## INTRODUCTION

Represented by counsel, Arcadio Vargas, Jr. ("Plaintiff") instituted this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

Plaintiff protectively filed concurrent applications for DIB and SSI on January 31, 2012. After these applications were denied, Plaintiff requested a hearing, which was scheduled to be held by

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

administrative law judge Joseph L. Brinkley ("the ALJ") on December 4, 2013. However, the hearing was postponed to give Plaintiff the opportunity to obtain a representative. Plaintiff was unable to find representation, and the hearing was held on May 6, 2014. (T.35-114).[2] On August 14, 2014, the ALJ issued an unfavorable decision. (T.14-34). The Appeals Council denied Plaintiff's request for review on January 6, 2016, making the ALJ's decision the final decision of the Commissioner. (T.1-4). This timely action followed.

The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual summaries contained in the parties' briefs. The record will be discussed in more detail below as necessary to the resolution of this appeal. For the reasons that follow, the Commissioner's decision is affirmed.

**THE ALJ'S DECISION**

The ALJ followed the five-step procedure established by the Commissioner for evaluating disability claims. See 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.

---

[2] Citations in parentheses to "T." refer to pages from the certified transcript of the administrative record.

At step two, the ALJ determined that Plaintiff has the following "severe" impairments: Raynaud's disease, degenerative disc disease, mechanical instability of the left patella, bilateral leg/neck/back pain, major depressive disorder, generalized anxiety disorder, bipolar disorder, and a learning disability. (T.19-20).

At step three, the ALJ found that Plaintiff's severe impairments, considered singly or in combination, do not meet or equal one of the impairments listed in the Listings, 20 C.F.R. Part 404, Subpart P, Appendix I. (T.19-21). The ALJ gave particular consideration to Listings 1.02, 1.04, 4.00, 11.00, 12.02, 12.04, 12.06, and 14.00.

Before proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform a range of light work, with some modifications to the physical and mental demands of such work. Specifically, Plaintiff can sit, stand, and walk each independently for up to one (1) hour at a time without interruption and without the need to rest in between positions; can sit for a total of six (6) hours in an eight-hour workday with interruptions and regularly scheduled breaks; can stand and walk for a combined total of three (3) hours with interruptions and regularly scheduled breaks; can frequently use his upper extremities to handle, finger, grasp, and feel bilaterally; can occasionally reach and lift overhead with his upper extremities, bilaterally; can occasionally operate foot and leg controls with

his lower extremities, bilaterally; can occasionally climb ramps or stairs, balance, kneel, and stoop; should never crawl, crouch, or climb ladders, ropes, or scaffolds; must avoid even moderate exposure to bright, flashing lights and more than fluorescent lighting; and must avoid concentrated exposure to wetness, vibrations, extreme hot or cold temperatures, and workplace hazards including unprotected heights, dangerous machinery, and uneven terrain. Additionally, Plaintiff is limited to performing unskilled, simple, routine, and repetitive tasks; although he can frequently engage in superficial contact with the general public. Finally, he is limited to low-stress work that does not require high-volume production quotas or fast-paced assembly lines. (T.21).

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work of building superintendent, delivery driver, or painter, all of which were medium exertion jobs. (T.27).

At step five, the ALJ relied on the testimony of the VE, who stated that a person of Plaintiff's age (40 years-old at the time of the hearing) and having his RFC, education, and vocational profile, could perform work a surveillance system monitor (D.O.T. 379.367-010, svp 2, sedentary), of which there were greater than 20,000 jobs in the national economy, and greater than 500 jobs in the state economy). (T.27-28). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (T.28-29).

**DISCUSSION**

**I. Failure to Perform the "Special Technique" Regarding Mental Impairments**

Plaintiff argues that the ALJ did not properly follow the "special technique" for evaluating mental impairments, which allegedly affected the ALJ's analysis at steps two and three of the sequential evaluation. As the Second Circuit has explained, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments, see 20 C.F.R. §§ 404.1520a, 416.920a, which "require application of a 'special technique' at the second and third steps of the five-step framework, Schmidt v. Astrue, 496 F.3d 833, 844 n. 4 (7th Cir. 2007), and at each level of administrative review." Kohler v. Astrue, 546 F.3d 260, 265–66 (2d Cir. 2008) (citing 20 C.F.R. § 404.1520a(a)); see also 416.920a(a)). The special technique "requires the reviewing authority to determine first whether the claimant has a 'medically determinable mental impairment[,]'" id. (quoting 20 C.F.R., § 404.1520a(b)(1), and, "[i]f the claimant is found to have such an impairment, the reviewing authority must 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c),'" id. (quoting 20 C.F.R. § 404.1520a(b)(2)). Paragraph (c) of 20 C.F.R. §§ 404.1520a and 416.920a "specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of

decompensation." Kohler, 546 F.3d at 266 (citing 20 C.F.R. § 404.1520a(c)(3)); see also 20 C.F.R. § 416.920a(c)(3)). These four broad functional areas are also contained in the "paragraph B" criteria for several listed impairments, see 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; as well as in "paragraph D" of Listing 12.05, the Listing for intellectual disability. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. In the first three areas, the degree of limitation is assessed using a five-point scale: none, mild, moderate, marked and extreme. In the fourth area, the degree of limitation is assessed using a four-point scale: none, one or two, three, four or more. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). ALJs must incorporate their special technique findings and conclusions in their decisions. 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2).

The Commissioner argues that the ALJ did in fact perform the special technique analysis. (See Def's Mem. at 17 (citing Pl's Mem. at 18 (citing T.20-21)). Plaintiff concedes this, but contends that the application of the special technique was flawed because "the ALJ never considered whether Mr. Vargas had a severe impairment of intellectual disability." (Pl's Mem. at 17). Although the ALJ did identify a learning disability as one of Plaintiff's severe impairments (T.20), a finding which Plaintiff acknowledges, the ALJ's "application of the special technique was not made pursuant to Listing 12.05." (Pl's Mem. at 18). The Commissioner counters

that the special technique is not performed separately for each Listing; instead, the same findings for each of the four functional areas are referenced when considering whether the applicable listed mental impairments are met. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. The Court agrees with the Commissioner. Even assuming that there was error, which the Court does not find to be the case, it was harmless because the ALJ rated Plaintiff's four areas of functional limitation listed in 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3), and explained how he weighed the relevant evidence and reached his conclusions regarding the severity of Plaintiff's mental impairments. Contrast with Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 662 (4th Cir. 2017) ("We cannot affirm the ALJ's evaluation of Patterson's mental impairment because his decision did not explain how he weighed all relevant evidence: he did not rate Patterson's four areas of functional limitation listed in § 404.1520a(c)(3) according to the prescribed scale, nor did he explain how he reached his conclusions about the severity of the mental impairment.") (citing 20 C.F.R. §§ 404.1520a(c), 404.1520a(d)).

Furthermore, Plaintiff's argument that the ALJ erred because the "application of the special technique was not made pursuant to Listing 12.05" rings hollow since Plaintiff does not actually argue that he *meets or equals* Listing 12.05. Moreover, Plaintiff does not challenge the ALJ's special technique findings on as unsupported by

substantial evidence or based on an inaccurate characterization of the record.

## II. Failure to Adequately Develop the Record

Plaintiff asserts that the ALJ was obligated to seek more information from his primary care physician, Dr. Jae Hyun Shin. (See Pl's Mem. at 19-23). Plaintiff does not claim that the record evidence was inadequate to reach a decision or that specific records were missing. Instead, Plaintiff asserts that the ALJ was required to request that Dr. Shin elaborate on her medical source statements. (See id. at 22-23).

"[B]y statute, an ALJ is duty bound to develop a claimant's complete medical history for at least twelve months prior to the filing of an application for benefits, but also to gather such information for a longer period if there [is] reason to believe that the information [is] necessary to reach a decision." DeChirico v. Callahan, 134 F.3d 1177, 1184 (2d Cir. 1998); see also 20 C.F.R. §§ 404.1512(d), 416.912(d). Whether to seek further evidence is a matter within an ALJ's discretion. See Rosa v. Callahan, 168 F.3d 72, 79, n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information . . . .") (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)).

Here, the substance of the actual evidence from Dr. Shin did not obligate the ALJ to re-contact him. Moreover, they do not support Plaintiff's disability claim and were not entitled to any significant weight. The Commissioner's regulations provide that medical opinions reflect judgments on what the claimant can still do, and in particular judgments based on objective medical evidence. 20 C.F.R. §§ 404.1527(a)(2), (c)(3)-(4), 416.927(a)(2), (c)(3)-(4). Dr. Shin did not provide actual medical opinions or assessments of Plaintiff's alleged functional limitations. To the contrary, in response to Plaintiff's repeated requests for disability forms, Dr. Shin agreed to provide responses outside her specialty, in the form of notes taking Plaintiff "off work" for a few months at a time. For instance, on July 25, 2012, Plaintiff brought Dr. Shin a "DSS form," saying that he needed it "filled [out] stating he cannot work due to his psychiatric conditions." (T.463; see also T.412. 459-68). Dr. Shin issued another referral for a psychiatric evaluation, and completed the "DSS form" by indicating that Plaintiff was not able to work for three months due to depression. (T.464). He instructed Plaintiff to have any future forms completed by one of his mental health providers. (T.464). Plaintiff did not comply, however, and returned to Dr. Shin with the same type of form on October 5, 2012, and made the same request. Notably, Dr. Shin, who was not a specialist in psychiatry or mental health issues, did not endorse any physical limitations

on any of these forms.³ A statement such as this by Dr. Shin that an individual is unable to work is not a medical opinion; instead, it is a statement on an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d); see also SSR 96-5p, 1996 WL 374183. Even a treating source's statement as to a claimant's disability status is not entitled to any special significance and can never be given controlling weight. Finally, Plaintiff does not suggest what would have been gained had Dr. Shin been re-contacted. See Reices-Colon v. Astrue, 523 F. App'x 796, 799 (2d Cir. 2013) (unpublished opn.) ("Reices-Colon's record supplementation argument is similarly baseless. She identifies no specific record that was missing, much less explains how it would have affected her case."). A

**III. Failure to Weigh Opinion from Examining Physician**

Plaintiff contends that the ALJ erred by failing to mention, much less explain the weight given to, what he describes as an "opinion" from Dr. Barbara E. Weber at Rochester General Hospital TWIG Medical Associates. The complete notation by Dr. Weber to which Plaintiff refers states as follows: "qualifies for SSD/SSI likely." (T.410). However, Plaintiff omits the word "likely" from his memorandum of law. That discrepancy aside, the Court agrees

---

³ A fair reading of the record indicates Dr. Shin was not inclined to support Plaintiff's disability claim, given that he consistently attempted to decline completing the disability forms that Plaintiff presented to him.

with the Commissioner that the ALJ did not err in his handling of Dr. Weber's statement.

Medical opinions reflect judgments on what the claimant can still do, and in particular judgments based on objective medical evidence. 20 C.F.R. § 404.1527(a)(2), (c)(3)-(4); id. § 416.927(a)(2), (c)(3)-(4). "The final question of disability is . . . expressly reserved to the Commissioner." Snell v. Apfel, 177 F.3d 128, 133–34 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(e)(1)); see also 20 C.F.R. § 416.927(e)(1). Therefore, a statement, even by a treating physician, that a claimant is unable to work or qualifies for disability, is never entitled to any special significance or weight. See Titles II & Xvi: Med. Source Opinions on Issues Reserved to the Comm'r, SSR 96-5P, 1996 WL 374183, at *2 (S.S.A. July 2, 1996) "[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.").

As noted above, the complete notation by Dr. Weber to which Plaintiff refers is that "learning disability qualifies for SSD/SSI likely poor employment h/x [history]." The comment was made in the

treatment note for Plaintiff's appointment to establish care with Dr. Weber. Thus, given that it was Plaintiff's very first appointment with Dr. Weber, it is clear that this comment represents Dr. Weber merely summarizing Plaintiff's subjective statements about his conditions. Dr. Shin, who provided care to Plaintiff at the same facility as Dr. Weber, notably did not endorse Plaintiff's claim that he was disabled based on a learning disability. In one of his notes under the heading "Learning disability," Dr. Shin wrote, "Patient qualifies for SSD/SSI? Will discuss with Dr. Weber, who has seen the patient on his first visit about *possible evaluation for this reason*[.]" (T.437; emphases supplied). This note from Dr. Shin shows that Plaintiff's qualification for SSD/SSI based on a learning disability was by no means an established or consistent opinion on the part of Dr. Weber or Dr. Shin. Nor did any of Plaintiff's mental health care providers ascribe to this conclusion that his alleged learning disability was disabling. Any error in failing to discuss this comment in detail was harmless since it would have had no bearing on the ALJ's ultimate decision. See Zabala v. Astrue, 595 F.3d 402, 409-10 (2d Cir. 2010) (finding remand was unwarranted "[b]ecause the report that the ALJ overlooked was not significantly more favorable to" the claimant, and there was "no reasonable likelihood that her consideration of [that evidence] would have changed the ALJ's determination that [the claimant] was not disabled").

**IV. ALJ's Mistaken Reference to Single Decision Maker**

Plaintiff argues that remand is warranted because the ALJ erroneously referred to the conclusions of a single decision maker ("SDM") that Plaintiff retained the ability to perform light, unskilled work comprised of simple tasks, in a low-contact environment. (T.115, 122). In his decision, the ALJ noted that an SDM "evaluated the claimant for a functional assessment. While a single decision maker is an unacceptable medical source, I have nonetheless accounted for this evaluation in assessing the severity of the claimant's alleged conditions." (T.24). However, Plaintiff argues, "SDM-completed forms are not opinion evidence at the appeal levels." Program Operations Manual System (POMS) DI 24510.050. Courts in this Circuit and elsewhere have held that In any event, the POMS guidelines "'have no legal force, and they do not bind the Commissioner.'" Lluberes v. Colvin, No. 13 CIV. 4027 RJS GWG, 2014 WL 2795256, at *10 (S.D.N.Y. June 20, 2014) (quoting Tejada v. Apfel, 167 F.3d 770, 775 (2d Cir. 1999) (citing Schweiker v. Hansen, 450 U.S. 785, 789 (1981)) (internal brackets omitted); Binder & Binder PC v. Barnhart, 481 F.3d 141, 151 (2d Cir. 2007); Carillo-Yeras v. Astrue, 671 F.3d 731, 735 (9th Cir. 2011) (noting that POMS "does not impose judicially enforceable duties on either this court or the ALJ") (internal quotation marks and citations removed); Miller v. Astrue, No. 3:07-CV-1093(LEK/VEB), 2009 WL

-13-

2568571, at *14 (N.D.N.Y. Aug. 19, 2009) ("[F]ailing to apply the POMS is not legal error.")).

Plaintiff has offered nothing but speculation that this erroneous reference by the ALJ had any bearing whatsoever on the decision. The Court has found nothing in the record to suggest that the ALJ's consideration of the SDM's functional assessment led him to formulate a RFC with fewer restrictions. In fact, the ALJ's RFC assessment was generally more restrictive than the SDM's opinion. After considering the remaining evidence in the record, excluding the SDM's report, the Court finds that the ALJ's RFC determination remains supported by substantial evidence. Accordingly, even if there was error any error by the ALJ in relying upon the opinion an SDM, it was harmless. See Shaw v. Astrue, No. 1:10-CV-02350-JLT, 2013 WL 204742, at *18 (E.D. Cal. Jan. 17, 2013) (ALJ gave weight to multiple SDMs; district court did "not consider[ ] the opinions of the single decision makers in its evaluation, and the ALJ's RFC determination remains supported by substantial evidence, including the opinions of several physicians. Accordingly, any error by the ALJ in relying upon the opinions of single decision makers was harmless") (citation omitted); Anderson v. Astrue, No. 09-CV-01436-LTB, 2010 WL 1553797 (D. Colo. Apr. 16, 2010) (ALJ's reference to the opinion of SDM was no more than harmless error since there were numerous references in the SSI claimant's medical record concerning the claimant's dependency on pain medication to

manage her complaints; these records were largely consistent with the opinions of the SDM that formed the primary basis for the ALJ's decision).

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision is free of harmful legal error and is based on substantial evidence. Accordingly, it is affirmed. Defendant's motion for judgment on the pleadings is granted, and Plaintiff's motion for judgment on the pleadings is denied. The Clerk of Court is directed to close this case.

**SO ORDERED.**

                                            **S/Michael A. Telesca**

                                            HON. MICHAEL A. TELESCA
                                            United States District Judge

Dated:    May 25, 2017
            Rochester, New York.